**UNITED STATES of America;  David E. Mitchell, Revenue Office of the Internal Revenue Service, Plaintiffs–Appellees,**

v.

**Roger L. SHARP, Defendant-Appellant.**

No.  89–2109.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1990.

Decided Dec. 6, 1990.

As Amended Dec. 20, 1990.

Stephen Jon Cribari, Acting Federal Public Defender, argued (Fred Warren Bennett, Federal Public Defender, Beth M. Farber, Asst. Federal Public Defender, Baltimore, Md., on brief), for defendant-appellant.

Doris Denise Coles, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart, Tax Div., U.S. Dept. of Justice, Washington, D.C., Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for plaintiffs-appellees.

Before PHILLIPS and WILKINSON, Circuit Judges, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

PHILLIPS, Circuit Judge.

The fifth amendment exists, in part, to "assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers,* 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975). This case raises the question whether the fifth amendment provided a taxpayer with a basis for refusing to answer questions propounded by the Internal Revenue Service (IRS) in the course of an investigation of possible civil liability. The district court held that it did not provide that protection and ordered the taxpayer to answer or be held in contempt. We disagree and reverse.

I

The IRS initiated an investigation of Roger Sharp to determine his tax liability for the years 1977, 1978, 1980, 1981, and 1982, after determining that Sharp had failed to file a federal income tax return for those years.[1] As part of the investigation, an IRS Revenue Officer issued a summons in December of 1987, requiring Sharp to appear for questioning and to produce financial records and documents for the years in question. Sharp failed to comply with the summons, and the government, pursuant to 26 U.S.C. §§ 7402(a), (b), and 7604(a), petitioned the district court for judicial enforcement. The district court, after a hearing, entered an order enforcing the summons and directing Sharp to appear and comply with the summons. Sharp did appear on the appointed day but he refused to testify or produce any documents.

The government then petitioned for an order holding Sharp in contempt. Because he faced criminal penalties, the court appointed counsel for Sharp, who had been unrepresented up to this point. At the show cause hearing, Sharp provided some records to the IRS but these documents proved useless. As a result the court ordered Sharp to answer IRS questions concerning his employment and his assets for the years in question. Sharp, accompanied by counsel this time, appeared for further questioning by the IRS and was asked a series of questions designed to elicit information on (1) his income for 1977–1982; (2) bank records or real estate records pertaining to any income and assets for those years; (3) his employment; and (4) the location of the banks in which he kept income or assets. Sharp, through his court-appointed counsel, invoked his fifth amendment privilege against self-incrimination in response to each IRS question.

---

1. Sharp's counsel submitted at oral argument that Sharp is a "tax protester." That he may be is irrelevant to the fifth amendment issue he raises.

The district court then ordered Sharp to answer the IRS questions. The court rejected Sharp's fifth amendment claim, finding that "in light of the government's representation (implicit, if not express) that it has no present intention of pursuing criminal prosecution of respondent, ... respondent's fear for self-incrimination is merely 'trifling or imaginary.'" The court added that if Sharp faced criminal prosecution in the future, the court could then, if appropriate, either dismiss the charges or suppress information obtained from the compelled testimony.

Upon Sharp's request, the district court certified the question for interlocutory appeal under 28 U.S.C. § 1292(b), and we granted leave to appeal.

## II

■ At the outset, we reject the government's contention that Sharp's claim of privilege came too late to be considered. Specifically, the contention is that he might have raised it earlier in resisting the court's enforcement order; that he did not; that the order was therefore a final one from which he might have appealed but did not; and that he was therefore precluded by principles of res judicata from raising it thereafter.

Such a failure may in appropriate cases operate to preclude later assertions of the privilege, *see, e.g., United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), but this is not such a case. Res judicata does not operate inexorably, and it should not operate here to deprive a litigant of a fundamental constitutional right because of his failure to assert it in technically proper form while unrepresented by counsel. Once represented, it was properly asserted.

## III

■ The fifth amendment's protection against self-incrimination applies in any type of proceeding whether civil, criminal, administrative, investigatory, or adjudicatory. *Maness*, 419 U.S. at 464, 95 S.Ct. at 594. And it applies not only to evidence which may directly support a criminal conviction, but to "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Id.* at 461, 95 S.Ct. at 592 (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)).

■ Accordingly, it may apply in the context of an IRS investigation into civil tax liability, given the recognized potential that such investigations have for leading to criminal prosecutions. *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); *United States v. Edgerton*, 734 F.2d 913 (2d Cir.1984); *Shaffer v. United States*, 528 F.2d 920 (4th Cir. 1975); *United States v. Cates*, 686 F.Supp. 1185 (D.Md.1988). In particular, the privilege may properly be invoked in this context on the basis that the information being sought could serve as a link in the chain of evidence in a prosecution for criminal violation of the tax laws. *See, e.g., Edgerton*, 734 F.2d at 921.

■ In this context, as generally, the privilege may not, however, be invoked on no more than the mere assertion by one claiming the privilege that information sought by the government may be incriminating. Whether there is a sufficient hazard of incrimination is of course a question for the courts asked to enforce the privilege. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

■ In making this determination, a court asks essentially two things. The first is whether the information is incriminating in nature. This may appear in either of two ways. It may be evident on its face, in light of the question asked and the circumstances of its asking. *Id.* at 486–87, 71 S.Ct. at 818–19. If it is so facially evident, that ends this inquiry. If it is not, the person asserting the privilege may yet demonstrate its incriminating potential by further contextual proof. *See, e.g., Rylander*, 460 U.S. at 758–59, 103 S.Ct. at 1553–54.

■ If the incriminating nature of the information is established by either route, there remains the question whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection. As to this, the proper test simply assesses the objective reasonableness of the target's claimed apprehension of prosecution. And on the better view of things here, the reasonableness of a claimed apprehension should simply be assumed once incriminating potential is found, unless there are genuine questions about the government's legal ability to prosecute.[2] That is to say, once incriminating potential is found to exist, courts should not engage in raw speculation as to whether the government will actually prosecute, *see Edgerton*, 734 F.2d at 921 (quoting *United States v. Jones*, 703 F.2d 473, 478 (10th Cir.1983)), and should only pursue that inquiry when there are real questions concerning the government's ability to do so because of legal constraints such as statutes of limitation, double jeopardy, or immunity. *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872 (7th Cir.1979).

■ Here, the incriminating nature of the information sought from Sharp was evident from the very questions asked under the circumstances of their asking. Sharp was asked to provide information directly relating to his income and his knowledge of it for the years in which he was under investigation for failing to file returns. Willfulness is an essential element of the criminal offense of failing to file income tax returns. 26 U.S.C. § 7203. Hence, it is evident that the information sought would "furnish a link in the chain of evidence that could lead to prosecution," and that suffices. *See Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818.

■ That leads to the second inquiry, whether Sharp's asserted apprehension of criminal prosecution was a reasonable one under the circumstances. It was on this point that the district court rejected his claim—on the express basis that "in light of the government's representation (implicit, if not express) that it has no present intention of pursuing criminal prosecution ... [Sharp's] fear of prosecution is merely 'trifling or imaginary.' "[3] As our statement of the proper test has indicated, the district court erred in this conclusion.

With the incriminating nature of the information facially evident, the reasonableness of Sharp's apprehension of prosecution should have been assumed, unless there were reasons (other than the government's express or implied representation of its *present* intention) to question the government's legal ability to prosecute. In the district court, the government suggested no such constraints, relying simply on its assertion of present intention, and the district court obviously relied on no extrinsic legal constraints on prosecution.

■ On this appeal, however, the government has sought to raise for the first time the proposition that the six-year statute of limitations applicable to willful

---

2. An assumption sufficiently justified, indeed compelled, by the existence of the government's general constitutional obligation faithfully to execute its criminal (as other) laws, U.S. Const. Art. II, § 3, principally by prosecuting (subject of course to prosecutorial discretion) all those whose commission of crime it has sufficient evidence to prove. Certainly an apprehension that in a particular case that general obligation will be carried out could not be thought unreasonable.

3. In so holding, the district court relied on *United States v. Reis*, 765 F.2d 1094 (11th Cir.1985), which it seemed to read as requiring an independent inquiry by the court into the actual likelihood of prosecution, and a finding of probability rather than mere possibility to trigger

fifth amendment protection. *See id.* at 1096 ("mere fact that evidence *might* be used" in criminal prosecution not sufficient) (emphasis in original). To the extent this is a proper reading of *Reis* (a matter not entirely clear from its rather cursory discussion of the point), we think the district court's reliance upon it was not well founded. Reliance more properly could have been placed on a recent decision of the same district court in *United States v. Cates*, 686 F.Supp. 1185 (D.Md.1988) (Black, J.), which appears to have applied essentially the test we hold to be the proper one. *See id.* at 1191 (mere fact that information sought was facially incriminating demonstrated sufficient likelihood of prosecution to trigger constitutional protection; fact that IRS had not revealed any present intention to prosecute irrelevant).

failure to file, 26 U.S.C. § 6531, has expired "with respect to all years under investigation and for which information has been sought."[4] While we might be justified in declining to consider this newly advanced alternative theory for affirmance, *see Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), we believe we should address it in view of the general seriousness of allowing invocation of this privilege to thwart government investigations. Doing so, we find no merit in it.

Sharp was being investigated for, *inter alia*, tax years 1981 and 1982. According to the concededly thin case law on this question, *see United States v. Doelker*, 211 F.Supp. 663, 665 (N.D.Ohio 1962); *see also United States v. Phillips*, 843 F.2d 438, 443 (11th Cir.1988), the six-year statute of limitations began to run on April 15, 1982 (for 1981) and April 15, 1983 (for 1982). The IRS issued the summons on December 17, 1987, and petitioned for judicial enforcement on March 11, 1988. On May 16, 1988, the court entered an order enforcing the summons. Thus, it would appear that as of the date of the court's order enforcing the summons (May 16, 1988), the statute of limitations had not run for at least tax year 1982. Having reached this conclusion, we need not wrestle with the tougher problems of tolling or the appropriate time to make the inquiry of whether the statute of limitations had run. Since the statute may not have run for tax year 1982, Sharp's fear of prosecution remains sufficiently well-founded.

## IV

▆▆▆ As indicated, the district court sought to buttress its rejection of Sharp's

claim by observing that if prosecution did ensue, the court could then act to protect him by either dismissing the charges or suppressing evidence. Presumably recognizing that this cannot act as a substitute for the constitutional protections provided by the self-incrimination clause, the government does not rely upon this proffer by the district court as an alternative basis for affirmance. We nevertheless address the point briefly in view of the district court's apparent reliance upon it.

In brief sum, a court may not on this basis find a person's fifth amendment right sufficiently protectible by the court that his answers to incriminating questions may be compelled. The appropriate device for achieving this end is the grant of use immunity under 18 U.S.C. §§ 6002, 6003, *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), a device that may only be used by the executive branch acting in its prosecutorial function, and is not available to the judiciary. *United States v. Doe*, 465 U.S. 605, 616, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984) (provision of "constructive use immunity" by judiciary would violate separation of powers); *Maness*, 419 U.S. at 463, 95 S.Ct. at 593 (compulsion under promise of judicial protection would violate self-incrimination clause).

## V

For the foregoing reasons, we reverse the order of the district court compelling the appellant, at peril of a contempt sanction, to answer questions propounded by the IRS. This is of course without prejudice to the government's right to seek com-

---

**4.** There is the oddity about the government's position that if it has indeed understood from the outset—whether correctly or not—that it could not prosecute, it could long since have acted decisively on that understanding and proceeded with its civil investigation without interruption. As Sharp notes in responding to this newly raised theory, had the government committed itself on the matter in some binding way this appeal never would have occurred. Appellant's Reply Br. at 3. In the end, the government equivocates on the point even as it raises it. At one point in its brief it suggests that "when the possibility of prosecution *ap-*

*pears to be remote* (as when the statute of limitations has run) rejection of a claim of privilege is proper." Appellee's Br. at 10–11 (emphasis added). At another, it asserts even more disarmingly that "since the applicable statutes of limitations have expired, we cannot fathom how taxpayer could possibly be incriminated...." *Id.* at 11. What the government has not yet done is formally to relieve the target's apprehension—as obviously it could by either of several available means—that prosecution remains a possibility. So long as the government thus attempts to keep this anchor to windward while this appeal is pending, Sharp's apprehension is not relieved.

pulsion by other, valid means if so disposed.

REVERSED