**UNITED STATES of America,
Petitioner,**

v.

**Karen KOWALIK, Respondent.**

**UNITED STATES of America,
Petitioner,**

v.

**Frank KOWALIK, Jr., Respondent.**

Nos. 91–7117–Civ, 92–6165–Civ.

United States District Court,
S.D. Florida.

Dec. 11, 1992.

A.B. Phillips, Tax Div., U.S. Dept. of Justice, Washington, DC, for petitioner.

Mary Catherine Vonner, Ft. Lauderdale, FL, for respondents.

## ORDER OF JUDGMENT AND COMMITMENT

MARCUS, District Judge.

THIS CAUSE comes before the Court on Notice by Petitioner, the United States of America, of Non–Compliance with this Court's Order of Civil Contempt and Request by Respondents, Frank Kowalik and Karen Kowalik, for Hearing and for an *In Camera Ex Parte* Review in the above-captioned proceeding. Having already been found in Civil Contempt of this Court by Order dated October 29, 1992 and failing to purge themselves in the manner provided by the Order of Contempt, Respondents, for the reasons set out in detail below, are hereby COMMITTED to the custody of the United States Marshal for the Southern District of Florida until such time as they shall purge themselves of contempt in conformity with the Order of Contempt dated October 29, 1992.

### I. *Factual Background*

As part of an investigation conducted by the Internal Revenue Service ("IRS") in connection with collection of alleged income tax liabilities of Frank and Karen Kowalik, the IRS issued two administrative summonses pursuant to 26 U.S.C. § 7602 directing both Frank and Karen Kowalik to appear before IRS officer Kaye Morris on October 22, 1991 and to testify and produce for examination certain documents for the purpose of inquiring into an offense related to the enforcement of the internal revenue laws of the United States. Both summonses addressed the tax liability of the Kowaliks during the "Form 1040 Periods ended December 31, 1976, December 31, 1978, December 31, 1979, and December 31, 1980" and specifically required the Respondents to bring with them

All documents and records you possess or control regarding assets, liabilities or accounts that are held in the name of the taxpayer(s) or for the benefit of the taxpayer(s) named above which the taxpayer(s) owns wholly or partially; or in which the taxpayer(s) has a security interest. These include but are not limited to: all bank statements, checkbooks, canceled checks, savings account passbooks, records or certificates of deposit for the periods from March 1, 1991 to October 1, 1991; all current vehicle registration certificates, deeds or contracts relating to real property, stocks and bonds, accounts, notes and judgments receivable, and life or health insurance policies currently in force.

Petition to Enforce IRS Summons, Ex. A. The summonses were served on the Kowaliks, but they did not appear on October 22, 1991 in response to the summonses. The Office of the District Counsel of the IRS then wrote to Respondents to arrange another appointment with Revenue Officer Morris. Respondents did appear at that meeting on November 26, 1991, but refused to produce the documents requested by the summonses or to give testimony as to the matters requested in the summonses. The United States then filed in the United States District Court for the Southern District of Florida a Petition to Enforce the summons of Karen Kowalik on December 23, 1991, and a Petition to Enforce the summons of Frank Kowalik on February 28, 1992. Attached to each petition were copies of the summons, copies of the November 26 letter and an affidavit of Officer Morris declaring that the proper summons procedure had been followed, that the summons had been properly served pursuant to 26 U.S.C. § 7603, and that the documents and testimony sought were necessary to the IRS investigation and not otherwise available. An Order to Show Cause why Respondents should not be compelled to obey the October 11, 1991 summons was issued by this Court in Mr. Kowalik's case on March 25, 1992 and in Mrs. Kowalik's case on December 31, 1991.

A hearing on the Orders to Show Cause was held on April 20, 1992 before the undersigned. Respondents were both represented by counsel. At the hearing, one witness was called: Revenue Officer Morris testified for the government and was cross-examined by Respondents. The Court took argument from Petitioner and Respondents, at which time Respondents raised four arguments to defeat the government's prima facie cases for enforce-

ment of the summonses. The four arguments, all directed towards assailing the government's compliance with certain administrative procedures, were: (1) the Revenue Officer had no authority to issue the summonses; (2) the summonses were invalid because of a deficient attestation clause on the served copies; (3) the summonses were unenforceable because they did not contain a "control number" as required by 44 U.S.C. § 3512; and (4) the IRS violated Florida Statutes 679.401(c) in that the IRS failed to file a security interest in the Office of the Department of State of the State of Florida. At the conclusion of the hearing, further briefing on these matters was ordered by the Court and received.

This Court found Respondents' arguments against enforcement to be without merit and issued a lengthy Order enforcing the summonses on May 29, 1992, directing Respondents to comply with the summonses within fifteen days.

On June 12, 1992, the Kowaliks, through their attorney, filed a motion for reconsideration of the enforcement Order and for stay. The motion for reconsideration again argued that this action could not be brought since the Attorney General had not properly authorized it; that certain documents requested were already in the possession of Officer Morris; and that compliance with the summons "would result in a prohibited condition of involuntary servitude—peonage." Request for Reconsideration at 4 (June 12, 1992). That pleading also contained the following argument:

> As to the Memorandum Opinion attached to the Order [of May 29], the Court's opinions relied upon for valid issuance of summonses and for applying exception to the requirement of OMB numbers all go to summonses issued for the purpose of determining a tax liability. The Respondents do not dispute that this could be ligitimate [sic] purpose. However, the *Collection Summonses* at issue in this instance is [sic] not for the purpose of determining a tax liability but to compel the Respondents to disclose private information for the purpose of seizure and levy of their property based upon such information. This is not a ligitimate [sic]

purpose as it violates the Respondents' right to privacy of records and their right not to be compelled to be witnesses against themselves, *U.S. v. Doe* [465 U.S. 605], 104 S.Ct. 1237 [79 L.Ed.2d 552] (1984). Where rights secured by the Constitution are involved there can be no rule-making or legislation which would abrogate them (*Miranda v. U.S.*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]) and although the Fifth Amendment mentions only criminal matters, the Supreme Court has ruled it applies alike to criminal and civil proceedings (*McCarthy v. Ardstein*, 266 U.S. 34 [45 S.Ct. 16, 69 L.Ed. 158]).

*Id.* at 2–3. This Court granted the stay on June 16, 1992, allowing the Kowaliks until June 30, 1992 to comply with the summonses.

The Kowaliks then filed motions to dismiss and again to stay on July 6. On July 8, 1992, this Court issued an Order denying the motion for reconsideration, denying the motions to dismiss and denying further stay. The July 8 Order noted that "blanket assertions of the Fifth Amendment privilege are generally impermissible." Order at 2 (July 8, 1992). The Order also found the anti-peonage statute, 42 U.S.C. § 1994 inapplicable; that 26 U.S.C. § 7403 ("Action to enforce lien or to subject property to payment of tax") was not offended by enforcement of the summons; and called for enforcement of the summonses and compliance by the Kowaliks forthwith. The Kowaliks discharged their attorney on July 20 and notified the Court of their intention to proceed *pro se*.

On July 28, pursuant to the May 29 and July 8 Orders of this Court, a compliance meeting was held between the IRS and the Kowaliks at which the Kowaliks refused to provide either documents or testimony. The Kowaliks again gave several reasons which they believed to be a defense to compliance with this Court's Orders. For example, Mrs. Kowalik expressed the following prerequisite to her testifying:

> MRS. KOWALIK: [I]f you put your questions in writing, we'll answer them.

MR. PHILLIPS: Unfortunately, that's not exactly what the summons says you have to do. Summons specifically says that you have to appear and give testimony and provide books and records. Now are you prepared to do that today? That's what we're getting to.

MRS. KOWALIK: No, we can't answer that blanketly.

Proposed Examination of Frank and Karen Kowalik (July 28, 1992) (hereinafter "Compliance Meeting") at 17. In response to counsel's reply that the recording of questions would be done only by the court reporter present, Mr. Kowalik indicated:

MR. KOWALIK: I feel very, very uncomfortable. I feel fearful over answering your questions for fear that I'm going to prejudice myself and I think Karen feels the same way.

MR. PHILLIPS: Is that correct, Mrs. Kowalik?

MRS. KOWALIK: Absolutely.

MR. KOWALIK: We're in a legal coercion kind of atmosphere, we're in an I.R.S. building in the possession of—that belongs to the U.S. Government.

*Id.* at 19. Repeatedly, the Kowaliks stated that they were not obligated to answer any questions or provide documentation because this Court had no jurisdiction to enforce the summons, that the summons had no legal effect, and that all questions had to be reduced to writing as a prelude to any responses. *See id.* at 50–54. Counsel for Petitioner stated that questions would begin with quotidian vital statistics such as name, address and marital status, and then proceed to inquire of financial matters and documentation thereof. *Id.* at 51. To this Mr. Kowalik announced: "I think anything we say beyond this point is going to be prejudicial to us. I believe that is exactly what you want to do here." *Id.* at 53. At this point, counsel for Petitioner advised the Kowaliks that they were required by the enforcement order to respond in some fashion to each question propounded but that

> If you feel you have a valid privilege, Fifth Amendment, for example, against answering any of the questions, I would

have no problem whatsoever with [Revenue Officer] Mr. Kanoza stating the question and you going to refuse to answer on the grounds of Fifth Amendment, or I may prejudice myself, but I'm not going to answer your question.... It may well be somewhat pro forma, if you will, but he's going to ask the questions. As I said, the whole time answer as you will, say I won't answer, I can't answer, please, please, that's all I ask.

*Id.* at 60.

Finally, the Revenue Officer engaged the Kowaliks in the following colloquy:

> MR. KANOZA: Sir, would you state your name?
>
> \*     \*     \*     \*     \*     \*
>
> MRS. KOWALIK: *No—We'll just make the statement that we don't believe that the Court order had any authority, that the judge had no authority under law to issue that Court order, and so we're just here as a courtesy to you.*
>
> \*     \*     \*     \*     \*     \*
>
> MR. KANOZA: Sir, do you care to answer the question as to your name being Frank—
>
> MR. KOWALIK: No. I really don't understand anything that's going on here.... And instead of aiding the cause of justice here, what we're talking about here is controlling us against our will with the intent I fell anyway very strongly to control us down the road with a debt that goes to controlling our labor against our will, and which is in violation—it's a condition prohibited by the peonage laws of the United States of America.

*Id.* at 65–66, 70–71 (emphasis added).

Thereafter, the Kowaliks filed the following further motions, all of which were denied by this Court: Motion to Dismiss on Discovered Regulatory Facts (filed July 20; denied August 6); Request for Sanctions to be Imposed on A.B. Phillips, Esq. if he did not rebut and refute each item in the Kowaliks' Affidavit (denied August 14); Motion to Stay Any Proceedings until the United States establishes authority of the

IRS by refuting the Affidavit (denied August 14); Motion to Disregard Response of the United States to the motion to dismiss because the signature on behalf of the United States was illegible (denied August 14). Notably, Respondents took no appeal from this Court's final orders of May 29 and July 8 ordering compliance with the summonses. *See Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964) (holding that orders enforcing internal revenue summonses are appealable).

On September 11, 1992, upon the petition of the United States, this Court issued an Order to Show Cause to the Respondents directing them to show cause why they should not be held in contempt for their failure to comply with the Court's previous Orders of May 29, 1992 and July 8, 1992, ordering their compliance with and enforcing the IRS summonses requiring their production of certain documents and the giving of testimony under oath.

The Court held a hearing on the Order to Show Cause on October 28, 1992. The Kowaliks elected to represent themselves, over the Court's clear caution that "I would strongly urge you to use an attorney, rather than to go it alone" and indication that "I am happy to have you come in with a lawyer ... this is a very serious matter." Tr. at 3 (October 21, 1992). At the hearing, the Court gave the Kowaliks every opportunity to raise any applicable defense to their failure to give testimony or produce records at the compliance meeting. *See e.g., id.* at 17, 19–20. The Kowaliks presented no valid reasons, defenses, or excuses for their failure to comply with the Orders of this Court, and instead reiterated arguments which this Court had previously found in its several Orders to be without merit: (1) that this Court had no jurisdiction over them, *see* Tr. at 7 (October 21, 1992); (2) that they are persons not subject to the internal revenue laws, *see id.* at 10; (3) that "the authority just did not exist to summons [them]," *see id.* at 12, 16, 18; (4) that they were entitled to put the revenue officers deposing them under oath, *see id.* at 15, 19; (5) that the reason they did not testify or produce records as directed by the Order was that the revenue officer named in the summons was not at the compliance meeting, *see id.* at 23. At no time did the Kowaliks raise the Fifth Amendment as a defense to their non-compliance.

Consequently, the Court found the Respondents to be in civil contempt for their failure to obey the lawful, clear and unambiguous Orders of this Court dated May 29, 1992 and July 8, 1992 for their refusal and failure to comply with the IRS collection summonses. Out of an abundance of caution, the Kowaliks were given a stay on the execution of the penalty until November 4, 1992 to produce the summoned records and to testify before the IRS. The Court instructed them plainly that their failure to comply would result in issuance of a warrant for their arrest. A written order memorializing those *ore tenus* orders was issued on October 29, 1992.[1]

---

1. The text of the Order of Civil Contempt issued on October 29, 1992 is as follows:

"THIS CAUSE comes before the Court upon its Order to Show Cause dated September 11, 1992 issued to the Respondents directing them to show cause why they should not be held in contempt for their failure to comply with the Court's previous Orders of May 29, 1992 and July 8, 1992, ordering their compliance with and enforcing certain Internal Revenue Service summonses requiring their production of certain documents and the giving of testimony under oath by the Respondents.

"By Order of May 29, 1992, this Court enforced the IRS summonses of the Kowaliks and directed them to comply with the summonses within fifteen days. On June 12, 1992, the Kowaliks filed a motion for reconsideration and for stay. This Court granted the stay on June 16, 1992, allowing the Kowaliks until June 30, 1992 to comply with the summonses at issue. The Kowaliks filed motions to dismiss and again to stay on July 6. On July 8, 1992, this Court issued an Order denying the motion for reconsideration, denying the motions to dismiss and denying further stay. The Order called for enforcement of the summonses and compliance by the Kowaliks forthwith. Since that Order, the Kowaliks have filed the following motions, all of which have been denied by this Court: Motion to Dismiss on Discovered Regulatory Facts (denied August 6); Request for Sanctions to be Imposed on A.B. Phillips, Esq. if he did not rebut and refute each item in the Kowaliks' Affidavit (denied August 14); Motion to Stay Any Proceedings until the United States estab-

On November 4, the respondents, represented by new counsel, appeared at the offices of the IRS for the opportunity provided them by this Court to purge themselves of their contempt. In response to questions of the IRS employees, they asserted a Fifth Amendment privilege pursuant to *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), as a basis for their refusal to answer nearly all questions, and their refusal to produce any documents. The Kowaliks offered the Fifth Amendment as a defense even to questions requesting their social security numbers, and any questions in any way relating to their being employed. *See* Examination of Frank and Karen Kowalik (November 4, 1992) (hereinafter "Purgation Meeting") at 11–12, 13–16.

Subsequently, the instant motions were filed by the parties, argument was taken by this Court on December 3 and 4, and the parties given leave to brief further two questions:

(1) Whether, at the hearing on the Order to Show Cause why the taxpayer should not be held in contempt for not complying with the Court's prior Order enforcing an IRS summons, the taxpayer can raise a Fifth Amendment privilege as a defense to testifying or producing documents where that privilege had been raised in only a blanket fashion at the compliance meeting.

(2) Whether, having not raised the defense at the contempt proceeding, the taxpayer can now raise the defense at the purgation meeting.

## II. *Discussion*

The Notice of Non-Compliance filed by Petitioner urges this Court, in light of Respondents' repeated refusal to answer questions and produce documents in accordance with the terms of the Order of Contempt, to execute the Order by issuing a warrant for Respondents' arrest. Petitioner argues that by failing to raise the Fifth Amendment as a defense to the Orders to Show Cause why the summonses should not be enforced, and the Order to Show Cause why they should not be held in contempt, Respondents have waived the defense, and cannot at this late stage raise a Fifth Amendment claim. Further, Petitioner contends that the failure to litigate the defense at the enforcement stage bars Respondents from raising the privilege at the contempt stage. Respondent objects, arguing that the Kowaliks sufficiently raised the Fifth Amendment as a defense in their Request for Reconsideration and again at the July 28 compliance meeting, and thus the Kowaliks now are entitled to an *in camera* review of each of their objections and a determination of the existence of a Fifth Amendment privilege for each question.

The Fifth Amendment privilege "protects a person against being incriminated by his own compelled testimonial communications." *Fisher v. United States*, 425 U.S.

lishes authority of the IRS by refuting the Affidavit (denied August 14), Motion to Disregard Response of the United States to the motion to dismiss because the signature on behalf of the United States was illegible (denied August 14).

"A hearing on the Order to Show Cause was held before the undersigned on October 21, 1992. At the hearing, the Kowaliks presented no valid reasons or excuses for their failure to comply with the Orders of this Court, instead reiterating arguments which this Court had previously found in its several Orders to be without merit. Consequently, the undersigned found the Respondents to be in civil contempt for their failure to obey the lawful, clear and unambiguous Orders of this Court dated May 29, 1992 and July 8, 1992 for their groundless refusal and failure to comply with the IRS collection summonses. The Kowaliks were given a stay on the execution of the penalty until November 4, 1992

to produce the summoned records and to testify before the IRS. The Court instructed them that their failure to comply will result in issuance of a warrant for their arrest. Accordingly, it is

"ORDERED AND ADJUDGED that Respondents are in civil contempt of this honorable Court for their failure to obey this Court's orders of May 29, 1992 and July 8, 1992. It is further

"ORDERED that the execution of the order finding the Respondents in contempt be stayed until November 4, 1992. It is further

"ORDERED that if the Kowaliks do not comply with the IRS summonses and produce the summoned financial records and give testimony before the IRS by November 4, 1992, this Court will issue a warrant for their arrest." Order of Civil Contempt, 91–7117–CIV–MARCUS, 92–6165–CIV–MARCUS (October 29, 1992).

391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). It applies equally to civil proceedings. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The Eleventh Circuit Court of Appeals, in *United States v. Argomaniz,* 925 F.2d 1349 (11th Cir.1991), discussed at length the methodology for a taxpayer's invocation of the Fifth Amendment privilege against compulsory self-incrimination in response to requests for information in an IRS investigation. The Court observed that a taxpayer " 'must provide more than mere speculative, generalized allegations of possible tax-related prosecution ... the taxpayer must be faced with substantial and real hazards of self-incrimination.' " *Argomaniz,* 925 F.2d at 1353 (quoting *United States v. Reis,* 765 F.2d 1094, 1096 (11th Cir.1985)). Thus, a claimant must show specifically and concretely that she has a legitimate fear of criminal indictment if she complies with the IRS summons, and that the particular question or request for production of documents would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

■ The general rule is that blanket refusal to produce records or to testify is simply insufficient to support a Fifth Amendment claim. *See Argomaniz,* 925 F.2d at 1356; *United States v. Roundtree,* 420 F.2d 845, 852 (5th Cir.1969).[2] The taxpayer "must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense." *Roundtree,* 420 F.2d at 852; *see also Argomaniz,* 925 F.2d at 1353. The Court must then make a "partic-ularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *Argomaniz* at 1355. The Eleventh Circuit has suggested that this question-by-question inquiry be conducted *in camera,* with the taxpayer having the opportunity to substantiate his or her particularized claims of privilege. *See Argomaniz,* 925 F.2d at 1355. The test is first, whether the taxpayer faces a real and substantial hazard of incrimination; and second, whether each answer or the act of producing each record "would be sufficiently testimonial and incriminating to activate [the] fifth amendment privilege." *Argomaniz,* 925 F.2d at 1356, 1355.[3]

■ If the Fifth Amendment privilege were to be raised at all in this summons enforcement action, the prescribed exchange must occur at the latest, at the meeting seeking compliance with the enforcement order. *See generally, United States v. Bell,* 448 F.2d 40, 42 (9th Cir.1971) (finding a Fifth Amendment challenge on appeal from an enforcement order to be premature and requiring the respondent to obey the order to appear and raise the privilege in response to particular questions); *United States v. Rendahl,* 746 F.2d 553, 555 (9th Cir.1984) (finding that *res judicata* principles would not bar litigation of privilege issue at contempt hearing since respondents did not appear before the IRS until after the enforcement order was entered, and thus first opportunity to present those claims properly was at the contempt hearing). We note however, that even if the law would have permitted the Kowaliks to raise the defense for the first time at the contempt proceedings, they did not avail

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

**3.** The contents of subpoenaed business records are not privileged. *See United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The Supreme Court in *Doe, supra,* however, held that the act of producing the records would constitute protected testimonial incrimination subject to a valid Fifth Amendment claim, since the claimant would be admitting that the records existed, were in her possession, and were authentic. *See Doe,* 465 U.S. at 613 n. 11, 104 S.Ct. at 1242 n. 11. The privilege was narrowed some by the Court in *Braswell v. United States,* 487 U.S. 99, 115, 108 S.Ct. 2284, 2294, 101 L.Ed.2d 98 (1988), holding that a corporate custodian of records could not resist a subpoena on the grounds that the act of production would incriminate her in her individual capacity.

themselves of even a tangential mention of the privilege at that hearing.

Respondents' argument that the June 12 Request for Reconsideration effectively asserted the defense is wholly unpersuasive. The Kowaliks could have appeared as originally summoned and raised the privilege. Although they appeared at the rescheduled meeting on November 26, 1991, notably they did not assert the privilege, either in general or in response to any particular document sought or question asked. Nor did counsel for respondent raise any Fifth Amendment issues at the April 20, 1992 enforcement proceeding, instead electing only to assail the validity and authority of the summonses, various inherent clerical defects, and the procedure for issuing them. *See supra,* at 1572–73. There was thus no possible way for the Court to have conducted the *in camera* review at the enforcement proceeding. *See Roundtree,* 420 F.2d at 852. Accordingly, the Request for Reconsideration, filed as it was before the compliance meeting—and alleging what can only be characterized as the most fleeting and perfunctory gesture towards the Fifth Amendment—was an entirely premature and insufficient vehicle for bringing the merits of the privilege to the Court's attention. As of the time of the Request for Reconsideration, there had been no specific objections lodged to specific requests by the government, no showing that compliance with the collection summons could help lay evidentiary bricks for a criminal prosecution, and in fact, no mention of a constitutional privilege at all.

Once the summons was ordered enforced, the next opportunity for asserting the Fifth Amendment privilege became the July 28 compliance meeting. We have no doubt that the privilege was not properly invoked at the compliance meeting. As discussed above, blanket assertions of the Fifth Amendment are unavailing. *See e.g., United States v. Allee,* 888 F.2d 208, 214 (1st Cir.1989). In this Circuit, *Argomaniz* requires that the privilege be invoked fastidiously on a question-by-question or document-by-document manner, as speculative or generalized allegations of possible tax-related prosecution are insufficient. The Kowaliks' assertions that any further discussions might "prejudice" them surely do not comply with this *Argomaniz* requirement of particularity and specificity.

The purpose of the *Argomaniz* requirement is to enable the district court to review the circumstances of the summons to determine whether the civil collection action actually does engender a reasonable fear of a criminal prosecution, and then, whether the particular items or testimony requested would be sufficiently incriminating to activate the privilege. *See Argomaniz* at 1356; *Fisher* 425 U.S. at 411, 96 S.Ct. at 1581 (to qualify for the privilege, the information must "add ... to the sum total of the government's information"). The inchoate assertion of "prejudice" falls far short of a *specific* designation of challenged materials to which the court could subsequently determine whether the privilege adheres.[4] Failing even to denote the prejudice as constitutional in character—rather than, e.g., fiscal or personal—the Kowalik's refusal to answer cannot even be fairly classified as a generalized constitutional objection. Finally, at the contempt hearing, the Kowaliks raised neither a general nor a particularized suggestion that compliance with the Orders of this Court would in any way implicate the Fifth Amendment privilege against compulsory self-incrimination.[5]

---

**4.** Many years ago, Justice Holmes said that it would be impermissible to allow a taxpayer to "draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of law." *United States v. Sullivan,* 274 U.S. 259, 264, 47 S.Ct. 607, 608, 71 L.Ed. 1037 (1927); *see also Roundtree,* 420 F.2d at 852, 852 n. 17.

**5.** The case at bar is thus entirely distinguishable from that in *United States v. Roundtree,* 420 F.2d 845 (5th Cir.1969), cited by the Eleventh Circuit in *Argomaniz* for the proposition that "a blanket refusal to produce records or testify will not support a fifth amendment claim." *Argomaniz,* 925 F.2d at 1356. In *Roundtree,* Respondent raised the Fifth Amendment in response to an order to show cause why the IRS summons should not be enforced, stating that enforcement would be "in violation of due process of

■ The question before us thus becomes: having failed to raise the defense at the contempt proceeding, can the Kowaliks now raise it at the purgation stage? We think not, for two reasons discussed below: first, caselaw under *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) suggests that the Kowaliks could not even have raised the objection at the contempt proceeding, *a fortiori* they cannot raise it later at the purgation meeting; and second, even if they could have raised it, they did not, and are thus barred by *res judicata* from litigating a claim that could have been presented in the prior proceeding.

In *United States v. Rylander, supra,* the respondent had been ordered to produce certain records requested by an IRS summons which Rylander had failed to produce. At the contempt hearing, Rylander contended that he did not possess the records, but refused to submit to cross-examination, claiming the Fifth Amendment privilege. The Supreme Court pointed out that, at the contempt proceeding, the burden was on the respondent to show that he could not presently produce the records because he did not have them. The Court found that Rylander could not defend the contempt charge on the ground that he was unable to comply with the enforcement order because he did not have the records at the time of that order, rather, he could only defend on the ground that it would *now* be impossible for him to comply with the order

and thereby avoid contempt. The burden of production plainly was placed on the respondent, not the government, and he could not simply wave the flag of the Fifth Amendment rather than adduce proof in support of that burden. *See McPhaul v. United States*, 364 U.S. 372, 379, 81 S.Ct. 138, 142, 5 L.Ed.2d 136 (1960) ("The evidence clearly supported an inference that [the defendant] could have produced [the records].... The burden then shifted to the [defendant] to present some evidence to explain or justify his refusal."); *Maggio v. Zeitz*, 333 U.S. 56, 75–76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948) ("Of course, if [the person ordered to produce records] offers no evidence as to his inability to comply with the turnover order, or stands mute, he does not meet the issue."); *Oriel v. Russell*, 278 U.S. 358, 366, 49 S.Ct. 173, 175, 73 L.Ed. 419 (1929) ("[T]he contemnors had ample opportunity in the original hearing to be heard as to the fact of concealment, and in the motion for the contempt to show their inability to comply with the turnover order. They did not succeed in meeting the burden which was necessarily theirs...."). The Court reasoned as follows:

"It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The proce-

---

law because of the Fifth Amendment of the Constitution" because the "sole objective" of the summons was to seek material "for the improper purpose of obtaining evidence for use in a criminal prosecution." *Id.* at 848. The district court enforced the summons and quashed Respondent's motion to take the deposition of the IRS agent in charge of the case to investigate whether the investigation ultimately sought to lead to an indictment. Respondent appealed, but did not seek a stay of the enforcement order. Instead, he appeared at the IRS offices at the compliance meeting as commanded, and refused to testify or produce records again claiming a Fifth Amendment objection. *See id.* At the hearing on the order to show cause why he should not be held in contempt, Respondent again "asserted his Fifth Amendment rights." *Id.* The district court held Respondent in contempt. Respondent then appealed the contempt order as well. The Court of Appeals stated that

"[Respondent's] remedy is not to voice a blanket refusal;" rather, to properly raise the defense, he must "as to each question and record elect to raise or not to raise the defense." *Id.* at 852. The district court then may conduct the *in camera* review. The Court concluded that "[s]ince a blanket refusal is unacceptable, we are unwilling to say that [Respondent] waived this defense," and permitted the taxpayer to raise the defense on remand if he could show, after conducting the discovery improperly denied by the district court, that the investigation had "dominant criminal overtones." *Id.* at 852.

In contrast to the situation in *Roundtree*, the Kowaliks never raised the defense at the enforcement hearing, never raised the defense—even in a blanket fashion—at the compliance meeting, and never mentioned the Fifth Amendment at the contempt proceeding. Unlike in *Roundtree*, the Kowaliks never appealed either of this Court's enforcement orders.

dure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience."

*Rylander*, 460 U.S. at 756–7, 103 S.Ct. at 1552 (quoting *Maggio*, 333 U.S. at 69, 68 S.Ct. at 408). The Court continued:

> Because a proceeding to enforce an IRS summons is an adversary proceeding in which the defendant may contest the summons on any appropriate ground, and because a lack of possession or control of records is surely such a ground, the issue may not be raised for the first time in a contempt proceeding.

*Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552 (citations omitted).

To be clear, *Rylander* dealt with a contempt charge for failure to produce records, and the defense raised at the contempt hearing was lack of possession; the Fifth Amendment was only implicated as the incidental vehicle for respondent's failure to meet his burden of production. Nevertheless, we interpret *Rylander* to indicate that other defenses to enforcing the summons—including the Fifth Amendment—cannot under the circumstances of the case at bar be raised for the first time at the contempt stage. Any other reading would tend towards nullifying the previous order of enforcement and viewing the compliance meeting as a mere sham: a respondent who was faced with an order to comply with an IRS summons would need merely to show up at the compliance meeting and baldly decline to answer or produce; at the contempt hearing, the merits of the defenses could not be assayed by the Court which would be confronted with, e.g., a blanket assertion of the Fifth Amendment privilege for the first time; the Court would then have to give the respondent a third opportunity to properly raise the privilege in the manner prescribed unambiguously by *Argomaniz*. Again, this case is now situated far beyond that third opportunity: and even reading *Rylander* and *Argomaniz* to permit the Kowaliks' introducing the Fifth Amendment at the contempt proceedings, the fact remains that the Kowaliks never unveiled the Fifth Amendment as a potential shield even at that late stage.

We add that the Kowaliks were required to produce a list of particular books and records from a specified and narrow time frame. They were alerted to the exact target of the subpoena by the face of the initial summons, more than one year before the contempt proceedings. They were also required to give testimony about their financial dealings. Instead of interposing a privilege as a defense to the summonses or to any part of the summonses, or to the enforcement of the summonses at the compliance meeting, the Kowaliks chose to unleash their arsenal of procedural and administrative objections. They were given every opportunity to do so, and this Court considered each claim in turn, in order to afford the Kowaliks due process. Once they failed to comply with this Court's order requiring production, their recourse at the contempt hearing was to claim that it would now be impossible to comply. We observe that no such claim was made.

Were this Court to contemplate a claim of privilege at the contempt stage, we would be reconsidering the merits of the enforcement order, that is, we would be posing the question: "Was it improper to force production in the first place in light of the likelihood that production would incriminate the respondents?" This would violate the clear mandate of *Maggio v. Zeitz, supra,* that such reconsideration is barred by *res judicata,* because it would require the Court to revisit its order of enforcement. *See Maggio,* 333 U.S. at 75, 68 S.Ct. at 411. It would also undermine *Rylander's* edict that the burden of production not be shifted away from the respondent since it would, in effect, require the government to make a preemptive showing at the enforcement hearing that compliance would not tread on respondent's Fifth Amendment privilege. Moreover, a Fifth Amendment claim making its debut at the contempt proceeding could only appear in blanket form, because there would be no specific requests to treat in a question-by-question *Argomaniz* manner. Even though *Rylander* suggests that it was too late for the Kowaliks to assert the Fifth

Amendment at the hearing on the Order to Show Cause why they should not be held in contempt, we need not reach that determination in the case at bar because the claim was never raised at the contempt hearing.

At oral argument, Respondents urged that *Argomaniz* requires their privilege claims to be heard at this late stage. In *Argomaniz*, however, in contrast to the case at bar, the Fifth Amendment had been squarely raised in the requisite particularized manner: "in response to each incriminating question or document request [the respondent] refused to answer and cited his privilege against self-incrimination." *Argomaniz*, 925 F.2d at 1351 n. 5, 1356. Moreover, *Argomaniz* was an appeal from the enforcement order, whereas the Kowaliks appealed neither this Court's May 29 nor July 8 Orders requiring compliance with the summonses.

Respondents' reliance on *United States v. Sharp*, 920 F.2d 1167 (4th Cir.1990), is similarly unavailing. In response to the district court's first order enforcing an IRS summons in *Sharp*, the respondent appeared at the compliance meeting, but refused to testify or produce any records. The Government then petitioned for a contempt order. The district court appointed counsel for the respondent, who had been proceeding up to that point unrepresented, and again ordered enforcement of the summons. Respondent appeared at this second compliance meeting pursuant to the second enforcement order, and notably invoked his Fifth Amendment privilege in response to each question posed by the IRS. The district court rejected the Fifth Amendment claims as a defense to enforcement, ruling that the Fifth Amendment could not be raised in response to an IRS summons where the IRS had stated that it had no present intention of pursuing a criminal investigation. Before Respondent was held in contempt, the district court certified the question for interlocutory appeal under 28 U.S.C. § 1292(b). The Court of Appeals found that despite the civil context of such investigations, they have a "recognized potential ... for leading to criminal prosecutions," *id.* at 1170, and that the district court—when faced with a properly invoked claim of privilege—must conduct an inquiry to determine the incriminating nature of the information sought and whether the apprehension of prosecution was reasonable. *See id.* at 1171. The Court of Appeals also rejected the Government's contention that the claim of privilege was not raised earlier in resisting the enforcement order and was barred from consideration by *res judicata.*

In contrast to the Kowaliks, the respondent in *Sharp* clearly and specifically invoked the claim of privilege in response to each question posed by the IRS at the second compliance meeting, prior to the contempt proceeding. The Fourth Circuit found that the failure to assert the privilege at the first compliance meeting was not a bar, under *res judicata* principles, to the assertion of the privilege at the second compliance meeting pursuant to the second enforcement order. Contrary to the position taken by the Kowaliks in their most recent brief, the Court of Appeals did *not* decide that *res judicata* would *not* bar the assertion of the privilege at the *contempt* proceedings where it had not been raised at the compliance meeting. *See* Respondent's Brief at 8–10 (December 8, 1992); *Sharp*, 920 F.2d at 1170. Rather the Court decided only that *Rylander* would not preclude an assertion of the privilege at a subsequent compliance meeting (before the contempt proceedings and pursuant to a second enforcement order), where the privilege had not been raised at the first compliance meeting.

Unlike *Sharp*, in this case the Kowaliks never raised the claim at the enforcement proceedings, and thus this Court never had the opportunity to review the claim at the contempt proceedings. The Kowaliks never raised the Fifth Amendment at the compliance meeting. Moreover, here the Kowaliks never asserted their privilege even at the late stage of the contempt proceedings—either generally or with particularity—and instead focused their defense on the jurisdictional and procedural deficiencies of the action.

Even assuming *arguendo* that the law permitted respondents to raise the Fifth

Amendment privilege in a summons enforcement proceeding for the first time at the contempt proceedings, it is worth repeating that the Kowaliks made no such claim, although they were given every opportunity to do so. Having failed to litigate their defense at the earlier proceeding where such a defense could, *arguendo*, be presented, they would be barred in any event by *res judicata* from litigating it at the purgation stage. *See Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (*res judicata* binds the parties "not only to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose"); *see also Rylander*, 460 U.S. at 758–61, 103 S.Ct. at 1553–5 (because Rylander could have raised the defense of lack of possession of records in enforcement proceedings, he could not raise it for the first time as a defense to contempt); *Maggio*, 333 U.S. at 75, 68 S.Ct. at 411 (issue of possession had already been determined by enforcement order and may not be attacked in the contempt proceedings); *United States v. Roberts*, 858 F.2d 698 (11th Cir.1988) (magistrate's finding at enforcement stage barred raising defense of lack of possession at contempt stage); *cf. United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir.1984) ("Respondents are not barred from raising their defense of privilege in the contempt proceedings because the Fifth Amendment defense could not have been properly litigated in the enforcement hearing.").

The Kowaliks did not assert the Fifth Amendment privilege when they attended the initial summoned examination on November 26, 1991, despite having the entitlement and the opportunity to do so. We have found that they similarly did not raise it at the July 28 compliance meeting. The burden rested squarely on the Respondents to put forth the claim of privilege, not upon the United States to show that answers or the acts of production would not amount to another arrow in a potential prosecutor's quiver. *See United States v. Rylander*, 460 U.S. 752, 757–9, 103 S.Ct. 1548, 1552–4, 75 L.Ed.2d 521 (1983) ("Where compliance is impossible ... [i]t is settled ... that in raising this defense, the defendant has a burden of production."); *see also, supra*, at 1579. At some point, the refusal to shoulder the burden must be treated as a bar to a later assertion of the privilege. *See e.g., United States v. Brown*, 918 F.2d 82, 84 (9th Cir.1990) (holding that the assertion of privilege in a blanket manner at the enforcement proceedings, and again at the contempt proceedings, was not a defense to a finding of contempt for failure to produce documents). Permitting them to raise it now would effectively vitiate all of the previous proceedings, an incongruous result enabling the perpetual relitigation of the same matter. The burden rested squarely on the shoulders of the Kowaliks to raise the privilege and bring its merits to the attention of this Court. They did not raise it upon being initially subpoenaed before the IRS, although they could have; they made only the most tangential and passing reference to a privacy right in the Request for Reconsideration; they cannot fairly be said to have raised the privilege in the July 28 compliance meeting, despite having every opportunity, and even after being specifically instructed as to the method for raising it by counsel for Petitioner at that meeting; and they surely did not raise it at all in the contempt proceeding. The burden of asserting the Fifth Amendment privilege in these proceedings belonged to the Kowaliks; giving them every benefit of a doubt, we cannot say that they met it.

The Kowaliks have succeeded, by their dilatory tactics, in evading a valid IRS summons for fourteen months, with this Court meticulously safeguarding their procedural rights at every step of the way. The time for compliance is well nigh. As the Supreme Court noted in *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950), and again in *Rylander*, 460 U.S. at 762, 103 S.Ct. at 1555:

A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so nec-

essary to the effective functioning of courts and legislatures, would be a nullity.

We observe finally that the Kowaliks have been held in civil and not criminal contempt of this Court, and that the civil contemnor "carries the key of his prison in his own pocket." *Penfield Co. v. Securities & Exchange Commission,* 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); *see also Maggio,* 333 U.S. at 67, 68 S.Ct. at 407.

Accordingly, it is hereby

ORDERED and ADJUDGED that Frank and Karen Kowalik, having previously been found in civil contempt of this Court's Orders of May 29 and July 8, 1992, are COMMITTED to the custody of the United States Marshal for the Southern District of Florida until such time as they purge themselves of their contempt by giving testimony and producing documents as required by the IRS summonses.

DONE AND ORDERED.