989 F.2d 497
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA; Revenue Officer Shirley M.
Kriezel, Petitioners-Appellees,
v.
B. J. WALTON; Barbara Akers Walton; Respondents-Appellants.
 No. 92-1938.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: January 26, 1993
Decided: March 22, 1993
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Richard L. Voorhees, Chief District Judge. (CA-91-1193-A-MISC, CA-91-1194-A-MISC, CA-91-1195-AMISC, CA-91-1196-A-MISC)
 B. J. Walton and Barbara Akers Walton, Appellants Pro Se.
 Gary R. Allen, Scott Patrick Towers, United States Department of Justice, Washington, D.C.; Clifford Carson Marshall, Jr., Office of the United States Attorney, Asheville, North Carolina, for Appellees.
 W.D.N.C.
 AFFIRMED.
 Before HALL, PHILLIPS, and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 B.J. and Barbara Walton appeal from the district court's orders granting the Internal Revenue Service's (IRS) motions for enforcement of summonses pursuant to 26 U.S.C. § 7604 (1988).
 
 
 2
 In August 1991, the IRS, pursuant to 26 U.S.C. §§ 7402(b), 7604 (1988), petitioned the district court for judicial enforcement of four summonses: (1) issued to B.J. Walton to give testimony relating to the collection of his tax liability for tax years 1980, 1981, and 1982 (No. CA-91-1193-A-MISC); (2) also issued to B.J. Walton, to give testimony relating to his tax liability for tax years 1983 through 1990 (No. CA-91-1194-A-MISC); (3) issued to Barbara Walton to give testimony and to produce certain books, records, and papers which would assist in the collection of her tax liability for tax years 1980, 1981, and 1982 (No. CA-91-1195-A-MISC); and (4) issued also to Barbara Walton to give testimony relating to her tax liability for tax years 1983 through 1990 (No. CA-91-1196-A-MISC).[1]
 
 
 3
 After a show cause hearing in October 1991, the district court, by orders entered June 29, 1992, granted the IRS's motions to enforce the summonses. The orders required that the Waltons comply fully with the summonses within thirty days. The Waltons appealed.[2] We affirm.
 
 
 4
 Section 7602 of the Internal Revenue Code authorizes agents of the IRS to summon "any person" to produce information that "may be relevant" to an investigation to determine civil or criminal tax liability. To enforce the summons, the government need only show that the summonses were issued for a legitimate purpose, that the data sought may be relevant to the legitimate purpose, that the data is not already in the government's possession, and that the administrative steps required by the Internal Revenue Code were followed. United States v. Powell, 379 U.S. 48 (1964); Alphin v. United States, 809 F.2d 236 (4th Cir.), cert. denied, 480 U.S. 935 (1987). The IRS may establish its prima facie case by an affidavit of the investigating agent averring the four elements from Powell. See, e.g., In re Newton, 718 F.2d 1015, 1019 (11th Cir. 1983), cert. denied, 466 U.S. 904 (1984). The affidavits of Revenue Officer Shirley Kriezel which accompanied the petitions for judicial enforcement of the summonses established a prima facie case for enforcement.[3] Therefore, the burden shifted to the Waltons to show that the summons should not be enforced.
 
 
 5
 Most of the Waltons' complaints regarding the summonses were patently meritless, "tax-protestor" type arguments, e.g., that they are citizens of the "foreign state of North Carolina" and, hence, not under the jurisdiction of the United States; that the summonses were invalid because they lacked the necessary Office of Management and Budget Control numbers; that the summonses were not properly signed or "attested"; and that the revenue officer, Shirley Kriezel, was not authorized to issue summonses because she did not produce a "Delegation of Authority" letter from the Secretary of the Treasury.[4]
 
 
 6
 The Waltons also argued that enforcement of the summonses would violate their Fifth Amendment privileges. This Court has held that the Fifth Amendment applies to IRS investigations into civil tax liability, "given the recognized potential that such investigations have for leading to criminal prosecutions." United States v. Sharp, 920 F.2d 1167, 1170 (4th Cir. 1990). Whether there is a sufficient threat of incrimination is to be determined by the court. Id. This determination depends on a two-part inquiry. First, the court must determine whether the information's incriminating potential is facially evident or becomes evident upon introduction of further contextual proof; second, if the information is reasonably incriminating, the court must then determine whether criminal prosecution is sufficiently a possibility to justify invoking the privilege. Id.
 
 
 7
 Here, the district court, applying Sharp, held that "the incriminating potential of the information sought by both Collection Summonses is facially evident." Therefore, the district court's proper focus was on the second part of the Sharp inquiry: whether there is a sufficient possibility of criminal prosecution. The orders conclude as follows:
 
 
 8
 The Court expressly limits its ruling to a finding that enforcement of the Summonses ... could constitute an impermissible infringement of Respondent's fifth amendment right against self-incrimination. The Court hereby reserves ruling on the propriety of Respondent's invocation of the fifth amendment in the instant case ... the Court can make such determination only after Respondent presents himself with his records to Officer Kriezel for questioning or completes and returns the Government's proposed interrogatories and, as to each question and each record request, elects to assert or not assert the fifth amendment privilege, based upon his assessment of the incriminatory potential of the information sought. It would then be up to the Court, in an in camera proceeding or by other suitable method, to determine the propriety of Respondent's invocation of the fifth amendment by considering the questions asked, the documents requested, and Respondent's justification for asserting the fifth amendment in response to those questions and requests.
 
 
 9
 Because the district court's order permits the Waltons to invoke the Fifth Amendment in response to any matter in the summonses which may elicit criminally inculpatory material, the Waltons' compliance with the summonses does not create a risk of prosecution in violation of their Fifth Amendment privilege. If the Waltons invoke the privilege, the district court may decide to conduct an in camera review of the contested materials. However, that possibility has not yet occurred. If the district court, after in camera review, concludes that the contested materials should be disclosed, the Waltons may again appeal.
 
 
 10
 Therefore, we affirm the district court's orders. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The Waltons' tax liability for the years 1980 through 1982 has been established; the summonses for these years seek only information regarding assets available to collect this debt. Apparently, the Waltons did not file tax returns after 1982. The summonses for the years 1983 through 1990 seek information to determine tax liability
 
 
 [2]
 The Waltons' motion for stay pending appeal was denied by this Court on December 28, 1992
 
 
 [3]
 Officer Kriezel also testified at the October show cause hearing and provided testimony establishing the four Powell mlements
 
 
 [4]
 The district court's lengthy consideration of these claims is commendable