746 F.2d 553
 84-2 USTC P 9908
 UNITED STATES of America, and Michael W. Cameron, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
James K. RENDAHL, Respondent-Appellant.
UNITED STATES of America, and Michael W. Cameron, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
James V. BLAKELEY, Respondent-Appellant.
UNITED STATES of America, and Michael W. Cameron, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
Michael P. DRISCOLL, Respondent-Appellant.
 Nos. 83-4053, 83-4054 and 83-4146.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 10, 1984.
Submitted June 19, 1984.
Decided Nov. 1, 1984.
 
 Charles E. Brookhart, Jo-Ann Horn, Dept. of Justice, Washington, D.C., for petitioners-appellees.
 Neil Halprin, Missoula, Mont., for respondent-appellant.
 Appeal from the United States District Court for the District of Montana.
 Before FLETCHER and FARRIS, Circuit Judge, and CRAIG,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Respondents Rendahl, Blakeley and Driscoll appeal the district court's order holding them in civil contempt for failing to obey its order enforcing an IRS summons. All three claimed a Fifth Amendment privilege and made an in camera offer of proof to the district court to support their claims. We reverse.
 
 FACTS
 
 2
 IRS agent Cameron issued a summons to each of the respondents ordering them to appear before him to testify and produce all documents reflecting money received from, or transactions involving, taxpayer William P. Driscoll (brother of respondent Michael Driscoll) during the years 1976-1980.[1] None of the respondents complied with the summons. The IRS petitioned the district court for enforcement on February 14, 1983. The court set an enforcement hearing for March 11, directing respondents to show cause why they should not be compelled to obey the summons.
 
 
 3
 None of the respondents appeared at the enforcement hearing, and only Rendahl filed a response to the order to show cause, claiming a Fifth Amendment privilege. The court entered an order directing respondents to appear before Agent Cameron within 15 days.
 
 
 4
 On March 29, respondents Rendahl and Blakeley appeared before Agent Cameron but did not produce any documents and did not answer questions. Driscoll did not appear.
 
 
 5
 Concluding that its earlier order was not specific enough as to time and place, the court amended its order, directing respondents to produce documents and give testimony on April 28, 1983. Only Rendahl appeared on that date. He refused to answer questions as to whether he had received any compensation from William P. Driscoll between 1976 and 1980, claiming a Fifth Amendment privilege, and said he had no documents. Blakeley and Driscoll did not appear.
 
 
 6
 The government moved for an order to show cause why respondents should not be held in contempt for failing to obey the enforcement order. The court set Rendahl's and Blakeley's contempt hearing for July 1. Because of a problem in serving Driscoll with the enforcement order, the court set a second enforcement hearing for Driscoll on the same date. All three respondents appeared, and each made an in camera offer of proof to support their claims of a Fifth Amendment privilege. The court held the claims of privilege invalid, and on August 2 found Rendahl and Blakeley in civil contempt, ordering them incarcerated until they purged themselves of the contempt by producing the documents and giving testimony. 567 F.Supp. 515.
 
 
 7
 On the same date, the court enforced the summons as to Driscoll, ordering him to appear before Agent Cameron on August 16. He did not appear, and the court held Driscoll's contempt hearing on September 16. Driscoll appeared and the court suspended the hearing to allow him to appear before Agent Cameron that day. Driscoll did so, but he did not produce any documents and refused to answer questions as to compensation he received from William Driscoll. The court reconvened the contempt hearing and also found Driscoll in contempt.[2]
 
 DISCUSSION
 
 8
 1. Res Judicata.
 
 
 9
 The IRS argues that, because respondents could have pursued their Fifth Amendment claims as defenses to the summons in the enforcement proceedings, the enforcement order is res judicata and prohibits them from litigating that defense in the contempt proceedings. See United States v. Rylander, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (because Rylander could have raised defense of lack of possession of records in enforcement proceeding, he could not raise it, for the first time, as a defense to contempt). Blakeley did not raise any defense to enforcement of the summons. Rendahl and Driscoll contested issuance of the enforcement order but did not appeal it. The IRS claims that respondents, having failed to pursue their defenses to enforcement, are not free to disobey the court's order and then raise those same defenses in the contempt proceedings.
 
 
 10
 Respondents are not barred from raising their defense of privilege in the contempt proceedings because the Fifth Amendment defense could not have been properly litigated in the enforcement hearing. In United States v. Bell, 448 F.2d 40 (9th Cir.1980), we held that the appellant's Fifth Amendment challenge was premature on appeal from an enforcement order. "Appellant must present himself for questioning, and as to each question elect to raise or not to raise the defense." 448 F.2d at 42. In United States v. Ellsworth, 460 F.2d 1246, 1248 (9th Cir.1972), we further held that a district court's enforcement order restricting the questions that could be asked by an IRS agent was improper because it allowed a blanket assertion of the Fifth Amendment; the person should have been ordered to appear and assert the privilege to particular questions asked. Finally, in Steinert v. United States, 571 F.2d 1105 (9th Cir.1978), we held that an order that required respondents to appear before the IRS and allowed them to determine whether to raise the Fifth Amendment privilege with respect to each question asked or document sought was not a final, appealable order.
 
 
 11
 Thus, although the court allowed Driscoll to litigate the privilege issue in his enforcement hearing and Rendahl raised it in his, the issue was premature at that stage. Had respondents appealed, this court would likely have responded as in Bell, requiring them to obey the order to appear and raise the privilege in response to particular questions. Because none of the respondents appeared before the IRS until after the enforcement order was entered, their first opportunity to litigate properly their Fifth Amendment claims was at the contempt hearing.
 
 
 12
 2. Fifth Amendment.
 
 
 13
 In order to support their assertion of the Fifth Amendment privilege, respondents must show that their testimony would "support a conviction under a federal criminal statute" or "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege is validly invoked only where there are "substantial hazards of self-incrimination" that are "real and appreciable," not merely "imaginary and unsubstantial." United States v. Neff, 615 F.2d 1235, 1239 (9th Cir.), cert. denied, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). The existence of such a hazard is generally determined from "examination of the questions, their setting, and the peculiarities of the case." 615 F.2d at 1240.
 
 
 14
 The district court found that respondents' testimony would have incriminated them under this standard, since evidence that they had received income in any amount could be used to help prove they had received sufficient income to be required to file a return, thus subjecting them to possible liability for failure to file a return in violation of 26 U.S.C. Sec. 7203 (1982). Our review of the transcripts of the in camera proceedings convinces us that the district court's conclusion was correct. The district court nevertheless held that respondents were required to answer questions, despite the likelihood of self-incrimination, under this court's decision in United States v. Carlson, 617 F.2d 518 (9th Cir.), cert. denied, 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 468 (1980). We disagree.
 
 
 15
 In Carlson, the defendant had filed a false W-4 form claiming ninety-nine withholding exemptions, and then did not file a return. As defense to a charge of willful failure to file a return, Carlson claimed that filing a return would have incriminated him for having previously filed the false withholding form. The court found that Carlson would indeed have incriminated himself had he filed a return. 617 F.2d at 520. Nevertheless, it concluded that Carlson had not validly invoked the privilege. The court noted that in cases where the privilege is invoked to avoid incrimination for past tax crimes, the privilege against self-incrimination comes in conflict with the "need for public revenue collection by a process necessarily reliant on self-reporting." 617 F.2d at 521. In such cases, the court must balance these two interests.
 
 
 16
 In Carlson, the court concluded that the public interest in raising revenue outweighed Carlson's Fifth Amendment interests. Two factors were significant in the decision. First, Carlson had used the privilege as part of a scheme to avoid payment of taxes--his submission of a false W-4 form was concealed by his failure to file a return, which also enabled him to conceal his overall tax liabilities. Second, the requirement of filing an annual tax return is directed at revenue collection, not criminal prosecution: the questions in the return are neutral and directed at the public at large. See United States v. Sullivan, 274 U.S. 259, 263-64, 47 S.Ct. 607, 608, 71 L.Ed. 1037 (1927) (person engaged in illicit trade cannot refuse to file return, but must assert Fifth Amendment privilege as to specific incriminating questions).
 
 
 17
 The interests balance differently in this case, however. Respondents are not being asked to file a tax return; rather, they are being asked to give information in an IRS investigation concerning another person. Thus, the revenue system's reliance on self-reporting is not implicated here. Recognizing the Fifth Amendment claim would not, as it would in Carlson, give respondents immunity from criminal prosecution for failing to file returns. It would merely require the IRS to obtain information through some other source.
 
 
 18
 Furthermore, there is no basis for distinguishing this case from one in which respondents' own liability, civil or criminal, is under investigation. This case is analogous to Federal Deposit Insurance Co. v. Sovereign State Capital, Inc., 557 F.2d 683 (9th Cir.1977), where this court held that one who was under a state indictment for tax fraud could not be forced to testify as to his assets in a judgment debtor proceeding. See also United States v. Jones, 703 F.2d 473 (10th Cir.1983) (subject in ongoing civil and criminal IRS investigation could not be forced to answer questions regarding financial affairs in judgment debtor proceedings).
 
 
 19
 The fact that respondents were not the subject of any criminal investigation is not significant. The existence of a criminal investigation serves only to establish that answers are likely to be incriminating. Here, respondents have established the likelihood of incrimination by offering proof that they could be subject to criminal liability for failing to file returns for the years 1976-1980. Thus, we conclude the district court erred in holding that respondents did not establish a valid Fifth Amendment privilege.
 
 
 20
 Whether that privilege would extend to all the documents sought and to all questions asked is impossible to determine because there is no record as to what specific questions, if any, Driscoll and Blakeley were asked and the district court did not address the Fifth Amendment issue as to particular documents. There may also be a remaining issue as to whether a statute of limitation protects respondents from criminal liability for some of the years in question, thus eliminating the possibility of self-incrimination. Therefore, we reverse and remand for further proceedings consistent with this opinion.
 
 
 
 *
 Hon. Walter E. Craig, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 The IRS has authority to summon witnesses and records and to seek enforcement in the district court, pursuant to Internal Revenue Code Secs. 7602 and 7604 (1982)
 
 
 [2]
 The contempt orders have been stayed pending appeal