UNITED STATES of America, Petitioner,

v.

Fred AEILTS, Respondent.

No. CV 93–4131–RSWL (Ex).

United States District Court,
C.D. California.

April 27, 1994.

Nora M. Manella, U.S. Atty., Los Angeles, CA, for petitioner.

Fred Aeilts, pro se.

## ORDER RE: PETITIONER'S MOTION FOR CIVIL CONTEMPT

LEW, District Judge.

### I. BACKGROUND

The Internal Revenue Service (IRS) initiated an investigation of respondent Fred Aeilts to determine his tax liability for the 1986, 1987, 1988, 1989, 1990, and 1991 calendar years. As part of the investigation, an IRS agent issued a summons in April of 1993 requiring Mr. Aeilts to appear for questioning and to produce financial records and documents for the years in question. Mr. Aeilts failed to comply with the IRS request and the government petitioned this Court for

judicial enforcement of the summons pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). After a hearing on September 13, 1993, this Court ordered Mr. Aeilts to appear before the IRS and comply with the administrative summons. Mr. Aeilts subsequently appeared on the appointed day but refused to answer the questions posed to him by the IRS agent and failed to produce the requested documents. Mr. Aeilts responded to most of the questions by stating:

> "I object to the question. I will decline to answer. I will invoke my Fifth Amendment right on the grounds that I do not wish to provide any evidence or link in a chain of information that may possibly be used against me in criminal prosecution."

The government then petitioned this Court for an order holding Mr. Aeilts in contempt for his failure to comply with the judicially enforced summons. Recognizing that Mr. Aeilts may have a valid Fifth Amendment assertion, at the contempt hearing on March 21, 1994, the Court ordered Mr. Aeilts to submit written arguments under seal discussing his Fifth Amendment defense and to produce any documents in his possession for an *in camera* review by the Court.

On April 4, 1994, Mr. Aeilts submitted to the Court under seal an explanation of his Fifth Amendment assertion and copies of various documents. On April 11, 1994 the parties appeared for a further hearing on the petitioner's motion for contempt and the Court took the matter under submission. After reviewing the documents submitted by Mr. Aeilts *in camera* and analyzing the arguments presented by both sides in their papers and during the hearings, this Court hereby issues the following ruling:

> Petitioner's motion to hold respondent Fred Aeilts in civil contempt is **GRANTED IN PART AND DENIED IN PART.**

### II. DISCUSSION

■ The Fifth Amendment privilege against self-incrimination applies in any type of proceeding whether civil, criminal, administrative, investigatory, or adjudicatory. *See Maness v. Meyers*, 419 U.S. 449, 461–64, 95 S.Ct. 584, 593–94, 42 L.Ed.2d 574 (1975);

*Kastigar v. United States,* 406 U.S. 441, 443–44, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); *United States v. Sharp,* 920 F.2d 1167, 1170 (4th Cir.1990). The privilege applies not only to evidence which may directly support a criminal conviction but to

> "information which would furnish a link in the chain of evidence that could lead to a prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution."

*Maness,* 419 U.S. at 461, 95 S.Ct. at 592 (citing *Hoffman v. United States,* 341 U.S. 479, 485–86, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). The privilege is validly invoked only where there are " ' "substantial hazards of self-incrimination' " that are " 'real and appreciable,' and not merely 'imaginary and unsubstantial.' " *United States v. Neff,* 615 F.2d 1235, 1239 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980) (citations omitted).

■ A person may not make a "blanket assertion" of the privilege. *See United States v. Brown,* 918 F.2d 82, 84 (9th Cir. 1990). The person must claim the privilege on a document-by-document or question-by-question basis. *See id.; United States v. Rendahl,* 746 F.2d 553, 555 (9th Cir.1984); *United States v. Ellsworth,* 460 F.2d 1246, 1248 (9th Cir.1972); *United States v. Bell,* 448 F.2d 40, 42 (9th Cir.1971); *United States v. Argomaniz,* 925 F.2d 1349, 1355 (11th Cir.1991). Whether there are "substantial hazards of self incrimination" is generally determined from an *in camera* "examination of the questions, their setting, and the peculiarities of the case." *Neff,* 615 F.2d at 1240; *see Argomaniz,* 925 F.2d at 1355 (holding that district court should review assertions of

privilege on a question-by-question basis during an *in camera* proceeding). Although the Ninth Circuit has addressed the issue of whether a person may assert the Fifth Amendment for failure to include information on a tax return,[1] it has not addressed directly the issue of whether the Fifth Amendment privilege applies to information sought through an IRS summons. *See, e.g., United States v. Brown,* 918 F.2d 82 (9th Cir.1990); *United States v. Rendahl,* 746 F.2d 553 (9th Cir.1984). Consequently, this Court must rely on persuasive authority from other circuits in determining whether Mr. Aeilts has made a valid assertion of the privilege sufficient to preclude a finding of contempt for his failure to comply with the IRS summons.

## A. ELEVENTH CIRCUIT'S APPROACH

In *United States v. Argomaniz,* 925 F.2d 1349 (11th Cir.1991), the Eleventh Circuit Court of Appeals addressed the issue of whether compliance with an IRS summons would violate a person's Fifth Amendment privilege against self-incrimination. In *Argomaniz,* the IRS initiated an investigation into Alberto Argomaniz's tax liability after he failed to file tax returns for the 1984 through 1987 calendar years. *Id.* at 1350. As part of the investigation, the IRS issued an administrative summons directing Mr. Argomaniz to appear before an IRS officer to give testimony and produce documents. *Id.* Mr. Argomaniz appeared before the IRS officer but refused to testify after claiming that production of the documents would violate his Fifth Amendment privilege against self-incrimination. *Id.* at 1351. The United States filed a petition to enforce the summons and a magistrate judge subsequently ordered Mr. Argo-

---

**1.** *See United States v. Carlson,* 617 F.2d 518 (9th Cir.), *cert. denied,* 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 468 (1980). In *Carlson,* the Ninth Circuit held that

> an individual who seeks to frustrate the tax laws by claiming too many withholding exemptions, with an eye to covering that crime and evading the tax return requirement by assertion of the Fifth Amendment is not entitled to the amendment's protection.

*Id.* at 523. The court weighed several factors in finding that the defendant could not refuse to file a tax return on the basis of the Fifth Amendment

after claiming ninety-nine exemptions on his W–4 form. The present case, however, is easily distinguished because Mr. Aeilts has refused to answer questions pursuant to an IRS summons and investigation. The Court in *Carlson* supported its holding by stating that " 'questions in the income tax return [are] neutral on their face and directed at the public at large.' " *Id.* Questions in response to an IRS summons, however, are not neutral on their face and are specifically directed at the target of the investigation. *See also Rendahl,* 746 F.2d at 556 (distinguishing *Carlson* ).

maniz to comply with the summons. *Id.* The magistrate judge also advised Mr. Argomaniz that he could raise the Fifth Amendment privilege on a document-by-document and question-by-question basis. *Id.* Mr. Argomaniz once again appeared before the IRS officer and asserted his Fifth Amendment privilege to each question and document request.[2] *Id.*

After asserting the privilege on a question-by-question basis, the district court adopted the magistrate's recommendation and ordered Mr. Argomaniz to comply with the summons within 15 days or otherwise be held in contempt. *Id.* at 1352. The district court, however, stated that Mr. Argomaniz "had shown a reasonable fear of criminal prosecution and that enforcement of the summons could force Argomaniz to waive his fifth amendment privilege against self-incrimination." *Id.* Mr. Argomaniz appealed the order and the district court stayed enforcement of the summons pending his appeal. *Id.*

On appeal, the Eleventh Circuit reversed the district court's order compelling Mr. Argomaniz to respond to the IRS summons and remanded the case with instructions to determine, through an *in camera* inspection, the existence of Mr. Argomaniz's Fifth Amendment privilege. *Id.* at 1356. In determining whether Mr. Argomaniz had shown a "substantial and real hazard of self-incrimination" such that the Fifth Amendment would excuse his non-compliance with the summons, the Eleventh Circuit identified two issues: (1) whether compliance with the summons would provide information incriminating to Mr. Argomaniz; and (2) whether the privilege was properly invoked. *Id.* at 1353 (citing *Grosso v. United States*, 390 U.S. 62, 64–65, 88 S.Ct. 709, 712, 19 L.Ed.2d 906 (1968)).

In analyzing the first issue, the court found that compliance with the IRS summons could incriminate Mr. Argomaniz even though the summons was pursuant to a civil investigation. *See id.* The court stated that a legitimate fear of criminal prosecution can exist while an IRS investigation remains in the civil stage and before transfer to the criminal

division. *Id.* Because 26 U.S.C. § 7203 of the Internal Revenue Code makes willful failure to file an income tax return a crime, testimony or production of documents would prove two of the essential elements of the crime: (1) that Mr. Argomaniz had taxable income for the years in question; and (2) despite the taxable income he failed to file tax returns. *Id.* at 1354. Thus, the court held that the civil tax investigation had become " 'an inquiry with dominant criminal overtones' " such that the respondent was entitled to raise Fifth Amendment objections. *Id.* (quoting *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir.1969)).

Secondly, the court held that the Fifth Amendment privilege may exist in Mr. Argomaniz's case even though he refused to produce documents in his possession. *Id.* at 1356. The court recognized that the privilege did not apply to the *contents* of the documents but applied to the *act of producing* the documents. *Id.* The court stated:

> By producing documents in compliance with the IRS summons, Argomaniz would be establishing the existence and authenticity of the documents listed in the summons, as well as verifying that these documents were in his possession.... He would actually be informing the government that he had income in the years in question yet failed to file income tax returns. This act of production would be sufficiently testimonial and incriminating to activate Argomaniz's fifth amendment privilege.

*Id.* (citation omitted). The court concluded that Mr. Argomaniz properly invoked his Fifth Amendment privilege and ordered the district court to make an *in camera* inspection of the evidence to determine if it was actually incriminating. *Id.*

### B. FOURTH CIRCUIT'S APPROACH

The Fourth Circuit has also dealt with the issue of whether the Fifth Amendment provides a taxpayer with a basis for refusing to comply with an IRS summons. In *United States v. Sharp*, 920 F.2d 1167 (4th Cir.1990),

---

**2.** For example, when asked if he had "deposit information or bank records and other financial information" for the years in question, Mr. Argo-

maniz responded: "Based upon my Constitutional rights, I refuse to answer that question." *Id.* at 1351–52 n. 5.

the IRS initiated an investigation of a "tax protester," Roger Sharp, after it discovered that he failed to file tax returns for the 1977 through 1982 calendar years. *Id.* at 1169 & n. 1. The IRS issued an administrative summons but Mr. Sharp failed to comply. *Id.* at 1169. The government then petitioned for judicial enforcement and the district court ordered Mr. Sharp to comply with the summons. *Id.* Once again Mr. Sharp refused to comply and the court, after appointing counsel, ordered him to answer questions regarding his tax liability for the years in question. *Id.* Mr. Sharp appeared for further questioning by the IRS and invoked his Fifth Amendment privilege against self-incrimination in response to each question. *Id.* The district court later rejected Mr. Sharp's Fifth Amendment assertion and ordered him to answer the questions posed by the IRS. *Id.* at 1170. The court stated that " 'in light of the government's representation (implicit, if not express) that it has no present intention of pursuing criminal prosecution of respondent ... respondent's fear of self-incrimination is merely "trifling or imaginary." ' " *Id.*

On appeal, the Fourth Circuit reversed the district court's order compelling Mr. Sharp to answer the questions propounded by the IRS. *Id.* at 1172–73. In making its determination of whether a sufficient hazard of incrimination existed sufficient to invoke the Fifth Amendment, the court identified two questions: (1) whether the information sought is incriminating in nature; and (2) whether a criminal prosecution is sufficiently a possibility to trigger the need for constitutional protection. *Id.* at 1170–71.

The court stated that whether the information is incriminating in nature may appear in either of two ways. *Id.* at 1170. First, the incriminating nature may be evident on its face, in light of the questions asked and the circumstances of its asking. *Id.* (citing *Hoffman,* 341 U.S. at 485–90, 71 S.Ct. at 818–19). Secondly, if the incriminating nature of the information is not facially evident, the person asserting the privilege may still demonstrate its incriminating potential by further contextual proof. *Id.* (citing *United States v. Rylander,* 460 U.S. 752, 757–61, 103 S.Ct. 1548, 1553–54, 75 L.Ed.2d 521 (1983)).

Whether criminal prosecution is sufficiently a possibility to trigger the need for Fifth Amendment protection depends upon "the objective reasonableness of the target's claimed apprehension of prosecution." *Id.* at 1171. The court stated that once incriminating potential is found to exist,

> "courts should not engage in raw speculation as to whether the government will actually prosecute ... and should only pursue that inquiry when there are real questions concerning the government's ability to do so because of legal constraints such as *statute of limitations, double jeopardy, or immunity."*

*Id.* (citations omitted) (emphasis added). The court applied this test to Mr. Sharp's circumstances and found that he had validly asserted the Fifth Amendment privilege. *Id.* The court found that the incriminating nature of the information sought was evident from the very questions asked and the circumstances of their asking. *Id.* at 1171. Mr. Sharp was asked to provide information directly relating to his income and his knowledge of any income for the years in which he was under investigation for failing to file tax returns. *Id.* Because willfulness is an essential element of the criminal offense of failing to file income tax returns, *see* 26 U.S.C. § 7203, according to the court, it was evident that the information sought would "furnish a link in the chain of evidence that could lead to prosecution." *Sharp,* 920 F.2d at 1171.

The Fourth Circuit also found that Mr. Sharp's apprehension of criminal prosecution was reasonable under the circumstances. *Id.* Because the government had not granted immunity and the statute of limitations did not preclude a criminal action, the court found that Mr. Sharp's apprehension could be assumed. *Id.* Therefore, the court found that Mr. Sharp validly asserted his Fifth Amendment privilege against self-incrimination and was not in contempt for failure to comply with the IRS summons. *Id.* at 1172.

## C. APPLICATION TO MR. AEILTS' CASE

■ After considering *Argomaniz, Sharp,* and the limited amount of Ninth Circuit case

law available, this Court is compelled to find that Mr. Aeilts asserted a valid Fifth Amendment defense to providing testimony and documents regarding his tax liability for 1988 through 1991. First, Mr. Aeilts has shown that the information sought by the IRS is incriminating in nature. *See United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. 1991); *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir.1990). Title 26 section 7203 of the Internal Revenue Code makes willful failure to file an income tax return a criminal offense. *See* 26 U.S.C. § 7203. Each of the questions asked by the IRS related directly to Mr. Aeilts income tax liability for the years in question. Any testimony by Mr. Aeilts would help the government prove that he received taxable income for the years in question and yet he knowingly failed to file income tax returns. Thus, the incriminating nature of the information sought is evident in light of the questions propounded by the IRS. *See Sharp*, 920 F.2d at 1170.

In addition, Mr. Aeilts adequately justified his assertion of the Fifth Amendment privilege on a question-by-question basis. As reviewed by the Court *in camera*, Mr. Aeilts provided an explanation of his Fifth Amendment defense for each question posed by the IRS. Consequently, Mr. Aeilts has met his burden of showing that the evidence he refuses to produce would "support a conviction under a federal criminal statute" or "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818; *Rendahl*, 746 F.2d at 555. Mr. Aeilts also properly invoked the Fifth Amendment privilege when asked by the IRS to produce documents relating to the years in question. Although the contents of the documents are not privileged under the Fifth Amendment, the "act of production would be sufficiently testimonial and incriminating to activate [Mr. Aeilts'] fifth amendment privi-

lege." *Argomaniz*, 925 F.2d at 1356.[3] Thus, the IRS' request to produce documents relating to Mr. Aeilts' income tax liability for 1988 through 1991 is sufficiently incriminating in nature.

Secondly, criminal prosecution is sufficiently a possibility to trigger Mr. Aeilts' Fifth Amendment privilege, *see Sharp*, 920 F.2d at 1170–71, but only with regard to his tax liability for 1988 through 1991. Willful failure to file an income tax return is a criminal offense, *see* 26 U.S.C. § 7203, with a six year statute of limitations. 26 U.S.C. § 6531(4). Because neither an information nor an indictment have been filed against Mr. Aeilts for failing to file an income tax return for the 1986 or 1987 calendar years, Mr. Aeilts cannot have a reasonable apprehension of criminal prosecution for information relating to those two years. Consequently, Mr. Aeilts assertion of the Fifth Amendment privilege is inappropriate in response to questions or document requests regarding his tax liability for 1986 or 1987.[4] Mr. Aeilts, however, properly asserted his Fifth Amendment privilege in response to questions regarding his tax liability for 1988 through 1991 because the statute of limitations has not run for willful failure to file a tax return for those years. In addition, there is no indication that Mr. Aeilts has been granted immunity from prosecution. *See Sharp*, 920 F.2d at 1171. Therefore, Mr. Aeilts' apprehension of criminal liability for the 1988 through 1991 calendar years is reasonably sufficient to invoke Fifth Amendment protection.

**IT IS THEREFORE ORDERED** that Mr. Fred Aeilts comply with the IRS summons in response to questions or document requests regarding his income tax liability for the 1986 and 1987 calendar years. Mr. Aeilts must comply with the IRS summons within ten (10) days from the entry of this order. If Mr. Aeilts fails to comply with the IRS summons, the government is to file with

---

**3.** Because the contents of the documents are not privileged under the Fifth Amendment, the IRS is not precluded from obtaining any incriminating documents through other lawful means.

**4.** The documents submitted to the Court by Mr. Aeilts, however, do *not* relate to Mr. Aeilts' tax

liability for 1986 or 1987. Thus, Mr. Aeilts is not required to submit those particular documents to the IRS. He is, however, required to submit to the IRS any documents relating to his income tax liability for the 1986 or 1987 calendar years.

this Court a notice for a hearing on Mr. Aeilts' non-compliance.