NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

NOV 23 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ARIELLE ROSE COWSER,

Defendant-Appellant.

No. 20-30131

D.C. No. 6:19-cr-00006-DWM-3

MEMORANDUM*

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted May 4, 2021
Seattle, Washington

Before: BOGGS,** BERZON, and MURGUIA, Circuit Judges.

Arielle Cowser appeals her convictions by a jury of conspiracy to commit robbery affecting interstate commerce (also called "Hobbs Act robbery"), in violation of 18 U.S.C. § 1951(a), and of aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. She contends that the district court should not

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Danny J. Boggs, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

have let her codefendant and ex-romantic partner, Kielan Franklin, invoke his Fifth Amendment privilege against testifying, and she contends that the government substantially interfered with his decision to testify by threatening him with perjury charges. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1.     "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). But the "accused's right to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his fifth amendment privilege." *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982). That privilege extends to "any crimes for which [the witness] may still be prosecuted." *Ibid.* It even extends to a crime to which the witness has pleaded guilty if he has not yet been sentenced for it. *See Mitchell v. United States*, 526 U.S. 314, 321–26 (1999).

We review de novo whether it was legal error to allow Mr. Franklin to invoke his Fifth Amendment privilege. *United States v. Rubio-Topete*, 999 F.2d 1334, 1338 (9th Cir. 1993).

To claim the Fifth Amendment privilege, a claimant need only show that his "testimony would 'support a conviction under a federal criminal statute' or 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir. 1984) (quoting *Hoffman v.*

*United States*, 341 U.S. 479, 486 (1951)).[1] But a claimant may invoke the privilege only if there are "'substantial hazards of self-incrimination' that are 'real and appreciable,' not merely 'imaginary and unsubstantial.'" *Ibid.* (quoting *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980)).

Here, it was proper for Mr. Franklin to invoke the privilege on the grounds that his prior sworn statements could subject him to a perjury prosecution. Even if the government could not ultimately prove beyond a reasonable doubt that Mr. Franklin committed perjury, the facially contradictory statements he had given would lead to a "real and appreciable" danger of incrimination. And Ms. Cowser's offer of proof shows that it was not "imaginary" that she would ask Mr. Franklin questions implicating those statements.

Mr. Franklin had more to fear than a perjury charge—his sentencing hearing still loomed. *See Mitchell*, 526 U.S. at 326–27 (recognizing that "[w]here the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony," such as a more severe sentence). Affirming one version of events over the other would have been additional evidence that he had testified falsely at one of his change-of-plea hearings, increasing the likelihood of an obstruction-of-justice enhancement. And testimony that he had directed his

---

[1] A state crime also suffices. *United States v. Balsys*, 524 U.S. 666, 671–72 (1998).

codefendants in any way would have increased the likelihood of a leadership-role enhancement. So he had a "real and appreciable" fear of an increased sentence. *Rendahl*, 746 F.2d at 555 (citation omitted).

For those reasons, Mr. Franklin could properly invoke the privilege.

2.     Ms. Cowser's claim that the district court let Mr. Franklin invoke the privilege too broadly also fails. True, a person invoking the Fifth Amendment privilege generally may not issue a "blanket refusal to answer any question" and must instead invoke it "in response to specific questions propounded by the investigating body." *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977). But there is an exception. If the district court is "in a position to 'say that any response to all possible questions would tend to incriminate the witness,'" then it may allow a blanket refusal to answer those questions. *United States v. Tsui*, 646 F.2d 365, 367 (9th Cir. 1981).

Here, the district court properly allowed Mr. Franklin to assert a blanket privilege. The court had already heard a full day's worth of testimony and was knowledgeable about the case. The court gave Ms. Cowser the opportunity to ask Mr. Franklin, under oath, any questions she wanted to ask him should he testify before the jury. After hearing Mr. Franklin's answers to—and refusals to answer—those proposed questions, the court then heard argument from Ms. Cowser and the government on whether Mr. Franklin should be compelled to testify. The court, "based on its knowledge of the case and of the testimony expected from" Mr. Franklin, was

therefore well positioned to determine that any of Mr. Franklin's responses to Ms. Cowser's questions would be "in all probability" incriminating. *See id.* at 367–68. Thus, Mr. Franklin's blanket invocation of the privilege was proper.

3. Nor has Ms. Cowser shown that Mr. Franklin's testimony "would have been both material and favorable to h[er] defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). She wanted him to refute the conspiracy charge by testifying consistently with his statements at his first plea hearing. But had he done so, the government would have impeached him with his contrary statements from his second plea hearing. Likewise, had Mr. Franklin testified consistently with his statements from the *second* plea hearing, then the most Ms. Cowser could have done would have been to impeach him with his statements from the first plea hearing. Either way, faced with two contrary statements about the existence of a plan to rob the victims, the jury would not likely have credited Mr. Franklin's testimony.

Worse for Ms. Cowser, Mr. Franklin's statements at the first plea hearing contradicted her theory of the case. He asserted at that hearing that *he sent* Ms. Cowser to the victims' house. But she testified that she went of her own accord to the victims' house, and she called two witnesses to buttress her story.

Thus, regardless of how Mr. Franklin testified, he would not have helped Ms. Cowser's case, so there was no error in excluding his testimony.[2]

---

[2] Because there was no error in allowing Mr. Franklin to assert his Fifth Amendment

4.      Nor did the government substantially interfere with Mr. Franklin's decision whether to testify. "Unnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying . . . deprive a criminal defendant of his Sixth Amendment right to compulsory process for obtaining witnesses in his favor," but "the Sixth Amendment is not implicated every time a prosecutor or trial court offers advice regarding the penalties of perjury." *United States v. Vavages*, 151 F.3d 1185, 1188–89 (9th Cir. 1998) (quoting *United States v. Davis*, 974 F.2d 182, 187 (D.C. Cir. 1992)). Deciding whether there was substantial interference is an "extremely fact specific" inquiry. *Id.* at 1190. We look at the totality of the circumstances, particularly factors such as "the manner in which the prosecutor or judge raises the issue, the language of the warnings, and the prosecutor's or judge's basis in the record for believing the witness might lie." *Ibid.* If "the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is necessary, and appropriate," then there is a "strong" inference that the prosecution coerced the witness into silence. *Ibid.* (quoting *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995)).

Because Ms. Cowser did not object below to the prosecution's comment in the district court, we review her claim for plain error. Fed. R. Crim. P. 52(b); *United*

---

privilege, we need not reach the district court's other reasons for excluding Mr. Franklin's testimony.

*States v. Olano*, 507 U.S. 725, 731–32 (1993).

We find none. At the district court's behest, the government opined why Mr. Franklin could invoke his privilege—one of the parties would try to get him to say on the record that he had previously lied under oath. The record amply supported the government's comments. And those isolated comments, directed to the court, *after* Mr. Franklin had already invoked the privilege, did not obviously or clearly influence his decision. Moreover, as discussed above, it is unlikely that Mr. Franklin's testimony would have been a material advantage to Ms. Cowser.

**AFFIRMED.**